**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LIA, <br><br>    Petitioner, <br><br>    v. <br><br>JAMES A. YATES, WARDEN<br>PLEASANT VALLEY STATE PRISON, <br><br>    Respondent. | No. C 05-2801 JSW <br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Now before the Court is Petitioner Michael Lia's ("Lia") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2003 conviction for 49 sex offenses against a minor, D.B. After considering the administrative record, the parties' papers and arguments, and reviewing relevant legal authority, the Court hereby DENIES the petition for writ of habeas corpus.

## BACKGROUND

On March 17, 2003, a jury found Lia guilty of 29 counts of lewd and lascivious acts on a child under the age of 14 (Penal Code section 288(a)); 15 counts of oral copulation on a child under the age of 16 by person over the age of 21 (Penal Code section 288a(b)(2)); four counts of lewd acts on a child 14-15 years old by a person at least 10 years older (Penal Code section 288(c)(1)); and one count of attempted intercourse (Penal Code section 288(a)). On April 29, 2003, the trial court

sentenced Lia to a term of 26 years.

The facts underlying the charged offense as found by the Court of Appeal of the State of California, First Appellate District, are as follows:

> In the late 19800's, D.B.'s family moved into a house directly across an alley from the apartment where defendant and his wife lived in South San Francisco. In the early 1990's after defendant's wife left him, defendant began visiting D.B.'s home almost daily and he and the D.B. household became "like family." In the summer of 1995, D.B., who was about 11 years old at the time, began helping defendant, who was then in his mid-sixties, with chores around his apartment, like cooking and cleaning, for which she was paid.
>
> Defendant began molesting D.B. during these visits to his apartment. From 1995 through 2000, defendant allegedly molested her approximately 40 times, with an incident occurring about every four to six weeks. The molestations ended in 2000, when defendant moved out of his apartment. During 2000-2002, defendant still visited D.B.'s home at least a couple times a week, but no sexual molestation was alleged to have occurred during that time period.
>
> On August 11, 2002, D.B. and her mother had an argument that lead to D.B. telling her mother about defendant's sexual molestation. D.B.'s mother called D.B.'s father, who called the police. At the police station, Officer Ryan Hyink and Detective Jeff Azzopardi interviewed D.B. about the molestations. After the initial interviews, Azzopardi helped D.B. make a pretextual phone call to defendant, asking defendant to come to her house the next morning to repair her car.
>
> The next morning Azzopardi and his partner waited in an unmarked car near D.B.'s home. When defendant arrived, Azzopardi approached him.[1] Azzopardi told defendant he was a detective with the South San Francisco Police Department, showed defendant his badge, and asked defendant if he was Mike Lia. Defendant said he was John, but when asked again admitted that he was Mike Lia. Azzopardi told defendant that "there had been an allegation made against him" and that he "would like to get his side of the story." When defendant replied that he was going to a friend's house and then to church, Azzopardi asked if he would first come to the police sation for an interview. Defendant complied, and agreed to drive his own car to the South San Francisco Police Department for an interview. Defendant then drove in front of the detectives, and led the way to the police department.
>
> Before going into the police station, Azzopardi testified that he explained to defendant that he was being interviewed voluntarily and that he was not under arrest. In the interview room, Azzopardi testified that he explained to defendant that the door was unlocked. Defendant sat down voluntarily. The entire interview was conducted in a normal, conversational tone. Azzopardi left the room twice, once asking defendant if he wanted some coffee, to which defendant replied "black with sugar."

---

[1] Azzopardi stands 6'2" and weighs approximately 220 pounds; his partner is 6'1" and weighs about 230 pounds; Lia is about 5'6" and weighs 140 pounds. (Ex. 3(a), RT at 53.)

Prior to trial, defendant filed an in limine motion to suppress the statements he had made to Azzopardi during the interview, based on violation of his *Miranda* rights. At the hearing on the motion, the court heard testimony from both Azzopardi and defendant. The court also viewed a videotape of the interview itself.[2] Defendant denied that Azzopardi had told him to come to the police station voluntarily, or that he was informed that the door was unlocked. The trial court explicitly accepted Azzopardi's version of the facts, however, noting that he was a "credible witness."

(Ex. 6 at 1-3.)

## PROCEDURAL HISTORY

The California Court of Appeal affirmed the trial court's conclusion that Lia was not in custody and that the statements were not admitted in violation of *Miranda*, and affirmed Lia's conviction on April 30, 2004. (Ex. 6 at 6.) On July 14, 2000, the California Supreme Court denied review. (Ex. 8.) Petitioner then filed this timely petition for writ of habeas corpus on July 8, 2005.

## STANDARD OF REVIEW

The Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Because the petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the AEDPA's provisions apply. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499-1500 (9th Cir. 1997) (en banc). Under the AEDPA, a district court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a

---

[2] The interview transcript does not contain a record of Azzopardi's statements to Lia regarding the voluntariness of the interview and the fact that the interview room door was unlocked, however the trial court credited Azzopardi's version of events. (Ex. 3(a), RT at 88-89.)

3

conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court correctly identifies the governing legal principle but "unreasonably applies that principle to the facts of the prisoner's case." *Id.*  The federal court on habeas review "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.   Rather, that application must also be unreasonable." *Id.* at 411.

To determine whether habeas relief is warranted, a federal court looks to the decision of the highest state court to address the merits of a Petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000); *see Packer v. Hill*, 291 F.3d 569, 578-79 (9th Cir.) (where State Supreme Court denied habeas petition without comment federal court looks to last reasoned decision of a state court as the basis of the state court's judgment), *rev'd on other grounds by Early v. Packer*, 537 U.S. 3 (2002).  If the state court only considered state law, the federal court must determine whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. *Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001).

A court must presume that any determination of a factual issue made by a state court is correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  That presumption is not altered by the fact that a factual finding is made by a state court of appeals, rather than by a state trial court. *See Sumner v. Mata*, 449 U.S. 539, 546-47; *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended* 253 F.3d 1150 (9th Cir. 2001).

## ANALYSIS

Lia's sole claim in his petition is that he is entitled to habeas relief because he was "in custody" prior to and during his initial confession to Azzopardi that, therefore, his statements were admitted in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  In asserting this claim, Lia argues that the totality of the circumstances surrounding his police station interview demonstrate that "there was a formal arrest or restraint on freedom of movement of the degree associated with a formal

4

arrest" sufficient to constitute a custodial interrogation requiring the protections afforded by *Miranda*. *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam). Lia further argues that the state appellate court both failed to consider relevant facts in making its decision and considered facts which had no logical relevance to the claim.

### A. Legal Standards.

#### 1. Standards Applicable to *Miranda* Warnings.

In *Miranda*, the Supreme Court held that a suspect subjected to custodial interrogation must be given certain warnings before the suspect's statements can be admitted in evidence. *Miranda*, 384 U.S. at 444-45. The *Miranda* decision announced a constitutional rule that cannot be superseded legislatively. *See Dickerson v. United States*, 530 U.S. 428, 431-32 (2000). *Miranda* and its progeny govern the admissibility of statements made during custodial interrogation in both state and federal courts. *See id.* at 443-45. The requirements of *Miranda* are "clearly established" federal law for purposes of federal habeas corpus review under 28 U.S.C. § 2254(d). *Juan H. v. Allen*, 408 F.3d 1262, 1271 (9th Cir. 2005); *Jackson v. Giurbino*, 364 F.3d 1002, 1009 (9th Cir. 2004).

Pursuant to the Supreme Court's holding in *Miranda*, a person subjected to custodial interrogation must be advised that he or she has the right to remain silent, that statements made can be used against him or her, that he or she has the right to counsel, and that he or she has the right to have counsel appointed. These warnings must precede any custodial interrogation, which occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action. *See Miranda*, 384 U.S. at 444. General "on-the-scene questioning" concerning the facts and circumstances surrounding a crime or other general questioning of citizens during the fact-finding process do not trigger *Miranda* warnings. *See id.* at 477-78.

#### 2. Standards Applicable to "In Custody" Determination.

*Miranda* protections are triggered "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Stansbury*, 511 U.S. at 322 (internal quotations omitted). "[I]n custody" for *Miranda* purposes means "'formal arrest or restraint on freedom of movement' of

5

the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). It requires that "a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave," as judged by the totality of the circumstances. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

Two discrete inquiries are essential to the custody determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. *Id*. a court must examine "all of the circumstances surrounding the interrogation" and determine "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004) (citing *Stansbury*, 511 U.S. at 322, 325); *see also Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) (stating that "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation").

### B. The State Court's Finding that Petitioner Was Not In Custody Was Not Contrary to Nor an Unreasonable Application of Clearly Established Federal Law.

The parties do not dispute that the state appellate court correctly identified the governing legal principles. Rather, the parties dispute whether the application of those principles resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law. The Court concludes that it did not.

The test for whether an individual is in custody is a general one and, thus, courts have "more leeway ... in reaching outcomes in case by case determinations." *Alvarado*, 541 U.S. at 664. In this case, Lia voluntarily drove himself to the police station for an interview knowing that he was going to be questioned, a factor that weighs against a conclusion that a suspect is in custody. *Compare, Mathiason*, 429 U.S. at 492-93, 495 (parolee not in custody where he voluntarily came to the police station in response to a request by a police officer); *Beheler*, 463 U.S. at 1122, 1124-25 (finding that suspect was not in custody for *Miranda* purposes where the suspect voluntarily went to the police station) *with United States v. Kim*, 292 F.3d 969, 977-78 (9th Cir. 2002) (finding defendant in custody, where defendant voluntarily initiated contact with police but without expectation of being

6

questioned).

Lia contends that he was forced to submit to the interrogation, arguing that the fact that Azzopardi insisted that Lia come to the police station and the fact that the two officers were larger than Lia favors a finding that he was in custody. The state appellate court considered both of Lia's arguments, however, and found that under the totality of the circumstances, these factors did not compel a finding that Lia was in custody. (Ex. 6 at 4.) This Court cannot say that conclusion was unreasonable. Although the officers may have been larger than Lia, the language used by Azzopardi to summons Lia to the station was not threatening. Azzopardi simply told Lia that they wanted to ask him questions regarding allegations made against him. This fact is similar to facts in both *Alvarado* and *Mathiason*, where the suspects consented to voluntary police station interviews after the investigating police officers requested to speak to each respective suspect. *Alvarado*, 541 U.S. at 656; *Mathiason*, 429 U.S. at 493.

Once Lia arrived at the police station, the state appellate court also concluded that, before the interview began, Azzopardi told Lia that Lia was not under arrest, that the interview was voluntary, and that Lia was free to leave at any time. Again, similar facts have been found to support a conclusion that a defendant was not in custody for *Miranda* purposes. *See Mathiason*, 429 U.S. at 493 (officer informed defendant he was not under arrest and appealed to defendant to be truthful, ); *Beheler*, 463 U.S. at 1122 (defendant told he was not under arrest and consented to interview that lasted 30 minutes). Indeed, in *Alvarado*, the Supreme Court concluded that the defendant was not in custody even though the police officer interviewing him failed to inform the defendant that he was free to leave. *See Alvarado*, 541 U.S. at 665.

Nor is there any suggestion that the appellate court's conclusion that once the interview began, the circumstances surrounding it did not give rise to a level of coercion that would have rendered Lia to be "in custody." *See, e.g., Kim*, 292 F.3d at 975 (noting that even if initial contact with police is voluntary, later circumstances may render interview coercive). Lia's freedom of movement was restricted only to the extent that the interview occurred in a room with the door closed; the door, however, was unlocked. Further, Azzopardi was the only officer conducting the interview, and he left Lia unattended in that room twice. *See Mathiason*, 429 U.S. at 493-94 (single

7

officer conducted 30 minute interview in an office with the door closed); *cf. Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir. 2000) (noting that "admittedly targeted questioning solely by virtue of occurring at a police station does not constitute a custodial interrogations sufficient to trigger the requirements of *Miranda*"). Finally, here, the interview lasted about one hour, more time than the interview in *Mathiason* or *Beheler* but less time than the non-custodial two-hour police station interview permitted in *Alvarado*. *See Alvarado*, 541 U.S. at 665.

On these facts, and considering them in their totality, this Court cannot say that the state appellate court unreasonably applied clearly established federal law when it found that Lia was not in custody.[3]

### C. The State Appellate Court Considered All Relevant Facts.

Lia also argues that the state appellate court ignored relevant facts in reaching its decision. First, Lia argues that the state court overlooked the fact that, at first, Lia refused to come to the police station and only agreed to go there after Azzopardi insisted. In the state appellate court's recitation of the factual background of the case, however, the court explicitly states that Azzopardi told Lia that he wanted to get Lia's side of the story, that Lia told Azzopardi that he was supposed to go to a friend's house and then church, and that Lia consented to the interview after Azzopardi again asked if Lia would come to the station for an interview. (Ex. 6 at 2.) The state court also specifically referenced these facts in its analysis when it rejected Lia's argument that the fact that Azzopardi insisted he come to the station, although Lia had other plans, weighed in favor of finding Lia in custody. (*Id.*, at 4, 6.)

Second, Lia contends that the state appellate court ignored the fact that Azzopardi believed Lia was guilty and that Azzopardi had probable cause to arrest Lia before the interrogation. This argument is without merit. Although Azzopardi may have believed Lia to be a suspect, a police officer's unarticulated intent to place a suspect in custody is not a factor used to determine whether a suspect was in custody at the time. *See McCarty*, 468 U.S. at 442 ("A policeman's unarticulated

---

[3] Lia argues that the state court incorrectly considered Lia's subjective belief to support the finding that Lia was not in custody. However, the state appellate court correctly applied the correct *objective* legal standard and noted that Lia's surprise would be consistent with what a "reasonable person in defendant's position would have felt." (Ex. 6 at 6; *see also* Ex. 3(a), RT at 89.)

8

plan [to place the suspect into custody] has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."); *see also Stansbury*, 511 U.S. at 324 ("It is well settled, then, that a police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether the individual is in custody for purposes of *Miranda*.").

## CONCLUSION

For the foregoing reasons, the Court concludes that the state appellate court's determination that Lia was not in custody for purposes of *Miranda* during his interview with Azzopardi was not an objectively unreasonable application of clearly established federal law. The petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: December 2, 2005

                                                    JUDGE JEFFREY S. WHITE
                                                    UNITED STATES DISTRICT COURT

9